IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JACK HENRY & ASSOCIATES            §
INC., *et al.*,                    §
                                   §
        Plaintiffs,                §
                                   §
v.                                 §            Civil Action No. 3:15-CV-3745-N
                                   §
PLANO ENCRYPTION                   §
TECHNOLOGIES, LLC,                 §
                                   §
        Defendant.                 §

## ORDER

This Order addresses Defendant Plano Encryption Technologies, LLC's ("PET")

motion to dismiss [24]. The Court grants the motion.

## I. ORIGINS OF THE DISPUTE

PET is a patent licensing company that owns a portfolio of United States patents

related to secure data transmission and storage technology. PET's sole business is to enforce

its intellectual property rights. *See* Pls.' Resp. 1 [33]. PET sent letters to various banks

throughout the state of Texas, accusing them of infringement and soliciting licenses from

them. Pl.'s Compl. 4–8 [1]. Specifically, PET targeted the following banks, which have

branches or customers in the Northern District of Texas: American National Bank of Texas;

First Sonora Bancshares, Inc.; First National Bank of Sonora; City Bank; First Financial

Bank; Lubbock National Bank; Happy State Bank; and North Dallas Bank and Trust. *Id.*

The products PET identified as infringing the patents-in-suit include products sold or

licensed to the banks by Plaintiff Jack Henry & Associates, Inc. ("Jack Henry"). As a result

of the threats of infringement made by PET, Jack Henry agreed to indemnify the banks for

the accused Jack Henry products.  *Id.* at 3.  Jack Henry filed a complaint in the Northern

District of Texas, seeking a declaration of noninfringment of the patents in suit. *See generally*

*id.*  PET moved to dismiss under Federal Rule of Civil Procedure 12(b)(3),[1] arguing that

venue is improper in the Northern District of Texas because PET neither resides nor conducts

business in the Northern District of Texas.  *See* Def.'s Br. in Supp. of Mot. to Dismiss 1 [25].


## II. RULE 12(B)(3) AND PERSONAL JURISDICTION

### A. Rule 12(b)(3) Standard

Once a defendant raises the issue of improper venue in a Rule 12(b)(3) motion to

dismiss, the plaintiff has the burden to prove that the chosen venue is proper.[2] FED. R. CIV.

P. 12(b)(3).  If a court does not hold an evidentiary hearing, a plaintiff may carry its burden

by presenting facts that, taken as true, would establish venue. *See Broadway*, 2016 WL

1259568, at *2.  The court must accept as true all allegations in the complaint and resolve

all conflicts in favor of the plaintiff.  *See id.*  Moreover, when deciding a Rule 12(b)(3)

motion, "the court is permitted to look at evidence in the record beyond simply those facts

---

[1]PET also moved to dismiss under Rule 12(b)(1) and argued that the Court should exercise its discretion under the Declaratory Judgment Act and decline to entertain Jack Henry's motion for declaratory judgment.  Because the Court dismisses this action under Rule 12(b)(3), it does not reach PET's other arguments.

[2]There is a split of authority among federal courts and in the Fifth Circuit with regard to which party bears the burden of establishing venue on a Rule 12(b)(3) motion to dismiss for improper venue.  It appears, however, that the majority of courts place the burden on the plaintiff.  *See Broadway Nat'l Bank v. Plano Encryption Techs., LLC*, 2016 WL 1259568, at *2 n.2 (W.D. Tex. 2016).  This Court will follow the majority.

alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).  Specifically, "the court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* at 238 (punctuation and citations removed).

The general venue statute, 28 U.S.C. § 1391, governs actions seeking judgment declaring noninfringment.  *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990) ("It has long been held that a declaratory judgment action alleging that a patent is invalid and not infringed—the mirror image of a suit for patent infringement—is governed by the general venue statutes . . . .").  Under § 1391(b), venue is proper in the following circumstances:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  And under 28 U.S.C. Section 1391(d)

> in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State . . . .

28 U.S.C. § 1391(d).  Thus, "a plaintiff must demonstrate that the defendant has sufficient minimum contacts with the district where the suit was brought to show venue was proper." *See Garnet Digital, LLC v. Apple, Inc.*, 893 F. Supp. 2d 814, 815 (E.D. Tex. 2012).

### B. Personal Jurisdiction Standard

"Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997).  "Because the Texas Long Arm Statute is coextensive with the confines of due process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of the Constitutional constraints of Due Process." *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003); *see Gessmann v. Stephens*, 51 S.W.3d 329, 335 (Tex. App.— Tyler 2001, no pet.).  To determine whether an exercise of personal jurisdiction comports with due process, "the constitutional touchstone remains whether the defendant purposefully established minimum contacts in the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (punctuation and citation removed).

A court has personal jurisdiction over a defendant if there is general or specific jurisdiction.  "General jurisdiction, on one hand, requires that the defendant have continuous and systematic contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009) (punctuation and citation removed).

"Specific jurisdiction, on the other hand, must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic." *Id.* (punctuation and citation removed). The Federal Circuit applies a three-prong test when determining whether a court has specific jurisdiction over a defendant: "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Id.* at 1018. "Once the plaintiff has shown that there are sufficient minimum contacts to satisfy due process, it becomes defendants' burden to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351–52 (Fed. Cir. 2003) (punctuation and citation removed).

In declaratory judgment context, "[t]he relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee purposefully directed [its] enforcement activities at residents of the forum and the extent to which the declaratory judgment claim arises out of or relates to those activities." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (punctuation and citation removed). "In many patent declaratory judgment actions, the alleged injury arises out of the threat of infringement as communicated in an infringement letter, and the patentee may have little contact with the forum beyond this letter. *Id.* at 1333 (punctuation and citation removed). In such circumstances the Federal Circuit explained:

> While such letters themselves might be expected to support an assertion of
> specific jurisdiction over the patentee because the letters are purposefully

> directed at the forum and the declaratory judgment action arises out of the letters, [the Federal Circuit has] held that, based on policy considerations unique to the patent context, letters threatening suit for patent infringement sent to the alleged infringer by themselves do not suffice to create personal jurisdiction. This is because to exercise jurisdiction in such a situation would not comport with fair play and substantial justice. Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement.

*Id.* (punctuation and citations removed). "Thus, for the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be other activities directed at the forum and related to the cause of action besides the letters threatening an infringement suit." *Id.* (punctuation and citations removed). "Examples of these other activities include initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Id.* at 1334 (punctuation and citation removed).

### III. THE COURT GRANTS THE MOTION TO DISMISS

#### A. PET Has Not Waived Its Right to Challenge Venue

As an initial matter, Jack Henry argues that PET waived its right to challenge this Court's venue when it filed a motion to dismiss under Rule 12(b)(3) without also filing a motion to dismiss under Rule 12(b)(2). Pls.' Resp. 7–8. This argument ignores the language of Section 1391(d), however, which requires a corporate defendant to have sufficient contacts with the forum district to support personal jurisdiction if that district were treated as a separate state, even when personal jurisdiction is otherwise proper in the state. Thus, failing

to challenge personal jurisdiction under Rule 12(b)(2) did not waive PET's right to challenge venue under Rule 12(b)(3).

### B. PET Does Not Have Sufficient Contacts With the Northern District

The Court finds that venue is not proper in the Northern District because Jack Henry has not shown PET's contacts are sufficient to subject it to personal jurisdiction if the Northern District were a separate state. The only connection between PET and the Northern District of Texas is a letter sent by PET to a single bank (the American National Bank of Texas) inviting the bank to take a license in PET's patents. *See* Def.'s Reply 6. PET did not direct its letters to the Northern District when it contacted the other banks. The Federal Circuit has held that, "based on policy considerations unique to the patent context, letters threatening suit for patent infringement sent to the alleged infringer by themselves do not suffice to create personal jurisdiction." *Avocent*, 552 F.3d at 1333 (punctuation and citations removed).

Jack Henry claims, however, that the Federal Circuit's holding in *Avocent* is distinguishable from the present case because PET's letters not only informed the banks of their alleged infringement of PET's patents, but they also invited the banks to take a licence in the patents. *See* Pls.' Resp. 8–9. Jack Henry argues that PET's only business is to protect its patent portfolio and solicit licenses. Thus, when PET sent its letters to the banks throughout the state, PET was conducting its business, and not just enforcing its patent rights. Moreover, Jack Henry argues soliciting business within the state can meet the requirements for specific jurisdiction under the Texas Long-Arm Statute and federal due process. *See id.*; *see also Rynone Mfg. Corp. v. Republic Indus., Inc.*, 96 S.W.3d 636, 639–40 (Tex.

ORDER – PAGE 7

App. – Texarkana 2002, no pet.) (holding that advertising in a national trade publication and personally soliciting a customer over the telephone sufficed to confer jurisdiction under the Texas Long-Arm statute). Finally, while Jack Henry acknowledges that infringement letters alone generally do not confer personal jurisdiction, it argues that sending a "demand letter" can confer specific jurisdiction because it can be deemed as a solicitation. *See* Pls.' Resp. 8–9.

In light of Federal Circuit precedent, Jack Henry's arguments are unavailing. Under *Avocent*, "a defendant patentee's mere acts of making, using, offering to sell, selling, or importing products" are unrelated "in the jurisdictional sense" to a determination of whether there is specific jurisdiction to issue a declaratory judgment claim for noninfringement. *Avocent*, 552 F.3d at 1336. Such activities "do not constitute such 'other activities' as will support a claim of specific personal jurisdiction over a defendant patentee. *Id.* Instead, the Federal Circuit found that "when the patentee enters into an exclusive license or other obligation relating to the exploitation of the patent . . . . the patentee may be said to purposefully avail itself of the forum and to engage in activity that relates to the validity and enforceability of the patent." *Id.* Thus, PET's efforts to license its patents when issuing its demand letters are inapposite for a determination of specific jurisdiction. Because PET does not have sufficient contacts with the Northern District, under Section 1391(d) the Northern District is an improper venue. Accordingly, the Court grants PET's motion to dismiss under Rule 12(b)(3).

## CONCLUSION

The Court grants PET's motion to dismiss under Rule 12(b)(3).

ORDER – PAGE 8

Signed August 26, 2016.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 9